IN RE WILL OF BELL EDDLEMAN KESTLER.

(Filed 19 November, 1947.)

**1. Wills § 23b—**

It is competent for the natural object of testatrix' bounty to testify on the issue of mental incapacity that, something less than two years prior to the execution of the instrument caveated, testatrix told the witness that papers had been prepared leaving the property to her, or at least the admission of such testimony is not sufficient ground for reversal.

**2. Appeal and Error § 39e—**

The admission of testimony over objection cannot be held for prejudicial error when testimony of like import is admitted without objection.

**3. Wills § 25—**

The use of the phrase "at the approximate time" of executing the instrument, in charging upon the question of mental capacity, will not be held for prejudicial error when the evidence tends to show a probable variation of several days between the preparation of the paper and its publication, and in other portions of the charge and in the issue submitted the question of mental capacity is directed to the time of the execution of the instrument.

**4. Appeal and Error § 39b—**

Where in a caveat proceeding there is no reversible error relating to the jury's finding of mental incapacity, exceptions relating solely to the issue of undue influence become immaterial and need not be considered.

APPEAL by propounder from *Alley, J.,* at February Term, 1947, of CABARRUS.

Issue of *devisavit vel non,* raised by a caveat to the will of Bell Eddleman Kestler, late of Cabarrus County, based on alleged mental incapacity and undue influence.

The will of the deceased was probated in common form on 17 October, 1946, having been offered for such purpose by Hamp Russell, principal beneficiary and executor named therein. The propounder is a stranger in blood to the deceased.

Thereafter, on 12 November, 1946, Odessa S. Williams, a niece of the testatrix, filed a caveat to the will, alleging mental incapacity and undue influence on the part of the propounder. Interested parties were listed and duly cited. The issue was transferred to the civil issue docket; and upon the hearing, the caveat was sustained on both grounds, the jury answering that the testatrix was incapable of making a will at the time of its execution, and that the paper writing propounded was procured by the undue influence of the propounder.

From judgment setting the will aside, the propounder appeals, assigning errors.

*Hartsell & Hartsell for propounder, appellant.*

*Z. A. Morris, Jr., and John Hugh Williams for caveator, appellee.*

Stacy, C. J. Only two exceptions need engage our attention, the one relating to the competency of opinion evidence, the other to the correctness of the charge.

1. The will under caveat is dated 18 March, 1946. The lawyer who drew it says it was prepared on that date, and it "might have been signed a day or two later." The testatrix died nearly eight months thereafter. Her husband, Simon Kestler, predeceased her by more than a year. He died sometime after 14 June, 1944 (on which date he and his wife executed a deed to Maude Gibson).

Odessa Williams was reared in the home of the Kestlers. She came there when she was 3 years old and stayed until she was 28. She says she spent a week with her aunt after her Uncle Simon's funeral. It was during this visit, according to the witness, that Aunt Bell "told me they had papers made out that I would get what they had—if anything happened to me my niece would get it." The purpose of this evidence was to lay, in part, the foundation for her opinion that her aunt was consciously incapable of making a later will totally at variance with this declaration. *In re Will of Lomax,* 226 N. C., 498, 39 S. E. (2d), 388; *In re Will of Craven,* 169 N. C., 561, 86 S. E., 587. While objection was interposed to the question which elicited the testimony, there was no objection to the answer and no motion to strike. Nevertheless, passing the sufficiency of the challenge, the evidence is competent on the issue of mental incapacity. *In re Will of Brown,* 203 N. C., 347, 166 S. E., 72; *Bissett v. Bailey,* 176 N. C., 43, 96 S. E., 648. At least its admission

would not work a new trial according to our previous decisions. *In re Will of Hinton,* 180 N. C., 206, 104 S. E., 341.

Nor does it appear to be too remote in point of time. *In re Will of Hargrove,* 206 N. C., 307, 173 S. E., 577. The exact length of time is not given. It must have been something less than two years. *In re Will of Brown,* 194 N. C., 583, 140 S. E., 192. However, the testimony of Arey Gray, a neighbor, quotes the same declaration of purpose without objection. Likewise, in full accord with the above testimony is that of the sister of the deceased: "If I may say it in my own way. She would talk good; she was as nice as she could be at times and you would walk over to that corner and she would cuss you out. That don't appear to me that her mind was sound. Russell waited on her; did nice things for her. She said, 'He is just like all the rest of the damn niggers, trying to trim me and get what I have got.'"

2. The following excerpt from the charge forms the basis of propounder's principal exception: "If it is proved to you by the evidence that she did not have a sound mind and disposing memory at the approximate time of making the alleged will, then it would be your duty to find that she did not have testamentary capacity to make the will in question."

Of course, testamentary capacity at the time of the making of the will is the test, *In re Will of Hargrove, supra,* but here the record shows a probable variation of several days between its preparation or date, and its publication. "Ordinarily, the question of a few days might not be capitally important, but this would depend entirely upon the circumstances of the given case." *In re Will of Ross,* 182 N. C., 477, 109 S. E., 365. There is no evidence on the instant record of any marked change in the mental condition of the testatrix around the time the will was made. Some of the witnesses speak of the condition of her mind on "the date of the execution, or about that time." Then, too, in other portions of the charge the jury's attention is directed to the "making and execution of the will" and "at the moment." The use of the word "approximate," while inexact, is regarded too slight a departure to be held for reversible error in the light of the present record. The issue speaks "at the time of the execution of said paper writing." The jury could hardly have been misled by the instruction. *In re Will of Stocks,* 175 N. C., 224, 95 S. E., 360.

3. The propounder is named as the principal beneficiary and executor of the will. He was a stranger in blood to the deceased and often ministered to her wants after her husband's death. He joined with a nephew in hiring Willie Miller to stay with her. He was a constant visitor in her home. The jury has found that the will was procured by his undue influence. *In re Will of Mueller,* 170 N. C., 28, 86 S. E., 719. Though charged with overreaching, he did not take the witness stand. *In re Will*

*of Hinton, supra.* However, as the issue of mental incapacity was answered in the affirmative, which sustains the caveat, the exceptions addressed to the issue of undue influence may be put to one side. *Winborne v. Lloyd,* 209 N. C., 483, 183 S. E., 756. They need not be considered.

If the deceased were incapable of making a will, the manner of its procurement would seem to be immaterial.

The validity of the trial will be sustained.

No error.